23-7393 United States of America v. Alboushari We'll ask Attorney Fast, okay, you're up first, and you, I understand, would like to reserve three minutes for rebuttal. Yes, Your Honor, thank you. First question I have for you, actually, in your blue brief you relied on section 3553 b1. Yes, Your Honor. You are aware that was invalidated by the Supreme Court, right? Yes, Your Honor, the reason why we cited section b1 is because that was the law pre-booker, so in looking at... Yeah, but it's not the law now. It is not the law now, Your Honor. I was looking for... Not finding, not relevant, unconstitutional. We're on the same page. So I just want to make sure we're not going to have any arguments about a law that's been declared unconstitutional. No, Your Honor. Very good. Okay. Thank you. Please proceed. Good morning, Your Honors, may it please the Court. My name is Elena Fast, and I represent the defendant, appellant Khalid Alboushari, on this appeal. We're here today because Mr. Alboushari pleaded guilty to six counts of international parental kidnapping with his stipulated guidelines of 21 to 27 months. This was the calculation that was adopted by Judge Furman, that was the calculation in the plea agreement, and that was the calculation adopted by the U.S. Probation Officer Pergano. The district court imposed a sentence of 92 months. The appellant respectfully submits that the district court committed procedural error in imposing the sentence. Ultimately, the situation that we find ourselves in is that the guidelines that Mr. Alboushari had on his case were absolutely consumed by the court's upward variance under 3553A. The appellant respectfully submits... And courts can do that, right? They can say the guidelines are way too high, and they can drop to 10% or 25% below that, or they can say the guidelines are ridiculously low and don't capture the magnitude of the crime, and they can go far above it. And if we're talking about substantive reasonableness, we ask whether it shocks the conscience, right? Yes, Your Honor. So tell us what you said procedurally is unreasonable here, which is not just, wow, this is a lot above the guidelines, because that's a substantive unreasonableness. What's the procedural unreasonableness here? The procedural unreasonableness that the appellant will argue is that looking at the guideline for the international parental kidnapping, which is 2J1.1, there is no enhancement... No, who cares about the guidelines? We're talking about procedural unreasonableness. So one way you can show procedural unreasonableness is showing the district court miscalculated the guidelines, but I think all the parties agreed, including you, that the district court got the guidelines right, correct? That is correct, Your Honor. Okay, so there's no guidelines error. It seems to me that your argument is that the court imposed a sentence above the guidelines, but what's the procedural error? If he got the guidelines right and then he put the book aside and said, now I'm going to talk about a 3553A factor, why am I looking back in the book? Well, Your Honor, there was extensive conversation with the appropriate guideline or guideline that was closer to the actual fact set issue to be the kidnapping guideline. Yeah, so why can't the court do that? Why is that procedurally unreasonable to say, I've calculated the guidelines, they don't capture this case, I'm using a different guidepost? Yes, Your Honor. What's, what, why is that procedurally unreasonable? The kidnapping... Outside the guidelines analysis? Yes, Your Honor. The kidnapping under 1201 sub A uses a 2A1.4 guideline, which does have a nominal enhancement based on the duration of the kidnapping. It adds in either a one point for seven days or more of the kidnapping, or a two point level enhancement for 30 days or more. But he didn't apply that guideline. Yes, Your Honor, but there was conversation about how that was the more appropriate guideline, and then we end up in a situation where Mr. Albusheir received 340% of his maximum guidelines. Right, I still, I would understand if you said he applied the kidnapping guideline, that's procedurally unreasonable, because it's not covered by the kidnapping guideline, but that's not what he did. Yes, Your Honor. So now it seems like you're saying he applied the kidnapping guideline, which was wrong, and by the way, when he applied it, he miscalculated it, but that's not what he did. That is correct, Your Honor. He was using it as sort of an external benchmark for his determination under the 3553 factors that the guidelines here do not capture the magnitude of the crime. Yes, Your Honor. So what's wrong with that? My argument is that Judge Frumman focused a lot on the duration of the time that the outside the country, and there is... All right, let's break that down. Would you agree, or not, that a judge may or may not consider that factor under 3553A? The judge may, Your Honor. May, okay, and we have said, have we not, that it is not our job to second-guess the weight that a judge ascribes to a particular permissible factor. Is that also not something we have said? That is correct as well, Your Honor. So are you not challenging the weight he ascribed to a permissible factor? I am, Your Honor. Okay, okay. The appellant respectfully submits that his sentence was also substantively unreasonable. The recommendation from the U.S. Probation Department was that the sentence was 36 months imprisonment, which was a 33% addition to the high end of Mr. Albasari's guidelines. The probation officer did not recommend any enhancements for obstruction, offense characteristics, or victim. How is that relevant? Well, I mean, with all due respect to probation officers, why do we care? I thought we review what judges do, not what probation officers do. Yes, Your Honor. So do we care whether a district judge obeyed the word or the recommendation of his probation officer? I think we should, Your Honor. We should? District judges owe some measure of deference to a probation officer? I thought the employment relationship is reversed. Your Honor, I agree with that. District Court judge is the ultimate authority on what the appropriate sentence is, but you have a probation officer who's incredibly experienced, who has interviewed probably thousands of people, who has met with Mr. Albasari, who's seen the calculus. Let me ask you this. Is there any case you can point to where one of the factors, even one small factor, in our reversing a district court was that they didn't do what the probation officer thought was appropriate? No, Your Honor. Okay. There's probably a good reason for that, right? Absolutely, Judge. The reason why I'm citing to the probation officer's recommendation is because Judge Furman sentenced Mr. Albasari to 340 times his guidelines, and I see my time is up. I thought it was 346 percent. 340 percent, Your Honor. Yeah, not 342 times. No, Your Honor. That would be absolutely horrifying. Thank you for clarifying. All right, AUSA, is it Lightenberg? Yes. May it please the court. My name is Jim Lightenberg. I'm an assistant United States Attorney in the Southern District of New York. I represent the United States in this appeal, and I represented the United States below. Albasari's sentence was reasonable. It was procedurally reasonable because Judge Furman appropriately considered the Section 3553A factors and provided a detailed explanation of the reason for his sentence, and it was substantively reasonable because it fell comfortably within the range of permissible decisions available to the district court. Albasari's arguments to the contrary are meritless. First, it was perfectly appropriate for Judge Furman to consider the duration of Albasari's offense. That factor was plainly relevant to the nature and circumstances of the offense, and it was directly proportional to the harm that Albasari caused to his ex-wife and to his children. Second, the record makes clear that Judge Furman considered the mitigating factors raised by Albasari. He explained that he had submitted to the PSR and defendants four sentencing submissions, all of which discussed those factors at length, and in fact, he specifically explained that he was imposing a lower sentence due to one of those factors, the conditions at the MDC. Can I ask you maybe a side question? And tell me, does the record reflect, I don't want you to give me anything that's not in the record, but does the record reflect how the children got back to the United States? I was curious. So the record includes some testimony from the ex-wife, Ms. Badre, at the Fatico hearing, indicating that there was some sort of change in the law in Sudan that facilitated her getting the kids, but I think it is a bit fuzzy. Again, I'm not asking you to go beyond the record. I was just curious because I didn't see that in the briefs. Finally, the 92-month sentence that Judge Furman imposed was substantively reasonable. Al-Bashari's conduct in this case was egregious. He abused and controlled his ex-wife and children for years. He committed passport fraud. He kidnapped the children from their mother and kept them apart for almost four years. During that time, he severely mistreated the children, deprived them of food, clothing, and education. He stalked and threatened to kill his ex-wife. He, despite learning about these charges, refused to face justice and lived as a fugitive for years, avoiding countries with extradition treaties to the United States. He, upon arrest in Saudi Arabia, tried to flee the border to Yemen to avoid extradition. He lied to the district court in a sworn affidavit. He baselessly accused the district court and law enforcement of corruption. He consistently attempted to minimize the seriousness of his conduct, and upon his release, he poses a major risk of danger to his ex-wife and children. So, given these factors, a 92-month sentence was not exceptional or shockingly high. It is between seven and eight years, if my math is correct. Okay, thank you very much. We have your argument. Why don't we hear from Attorney Fass. You have three minutes for rebuttal. If there's anything you think you'd like to respond to. Very briefly, Your Honor. With regard to the government's claim that Mr. Al-Bashari severely threatened the children, the children did not testify at the fatical hearing, so I did want to alert the court. It was just Ms. Baudrey testifying to her observations instead of the children coming in and talking themselves what they wanted. Did the district court credit her testimony? The district court identified, mostly credited her testimony, but did make a comment there was some inconsistencies on direct and cross. Judge Furman did remark that had we had more time and more questioning, he would have perhaps credited her testimony some more, and he also believed that there was an interpreter issue or a language barrier where Ms. Baudrey testified in English on direct, but she testified with the aid of the interpreter on cross. Nothing further, Your Honors. Thank you both very much. We will take the case under advisement. We appreciate your arguments.